UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Lee R. Carter,

                        Plaintiff,

    v.

Fresenius Kabi USA, LLC *et al.*,

                        Defendants.

**Report and Recommendation**

19-CV-1183 (JLS)

**I.  INTRODUCTION**

    *Pro se* plaintiff Lee Carter ("Carter") worked at defendant Fresenius Kabi USA, LLC ("Fresenius") for about two years as a Line 4 Qualified Capper.  According to Carter, on May 9, 2018, his supervisor, defendant Andrew Smith, "arbitrarily" moved him to Line 3.  Carter never explained why a change from Line 4 to Line 3 was bad.  Did the change involve a decrease in pay or responsibilities?  Was Carter singled out for this change when no coworkers ever underwent the same change?  In any event, Carter complained, was restored to Line 4 on May 16, 2018, and then was fired on May 21, 2018.  Despite the lack of details in the complaint, a few aspects of the case are apparent.  By the fact that Carter described supervisor Smith as Caucasian, Carter implies that the line change occurred because he is African-American.  Additionally, Carter has claimed a retaliatory firing; he believes that the stated reason for termination—a lunch break that ran too long by 10 minutes—was pretextual when no coworkers were ever disciplined for routine overruns on their break time.  Carter sued Fresenius, Smith, Terri Ashberry, and John Brotka (together the "Fresenius defendants") for racial discrimination and for racially motivated retaliation.  Carter also sued the Equal Employment Opportunity Commission ("EEOC") for failure to investigate to his satisfaction and for failure to sustain his charge of discrimination when it issued its "right to sue" letter.  Carter

sued defendants under a number of statutes: Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17; the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. §§ 4301–4333 and 5 U.S.C. § 8432b; 42 U.S.C. §§ 1981(a) and 1985(3); the Fourteenth Amendment; and the Equal Pay Act of 1963, Pub. L. 88–38, 77 Stat. 56 (1963). Carter originally sued in New York State Supreme Court, Erie County, and the Fresenius defendants removed the case to this District.

Defendants now have filed motions to dismiss under multiple sections of Rule 12 of the Federal Rules of Civil Procedure. (Dkt. Nos. 7, 16.) Defendants have presented numerous arguments for dismissal, and the Court will address those arguments in more detail below. In short, defendants together believe that Carter's service of process was defective; that Carter has not pled necessary elements of his claims under more than one statute; and that the EEOC cannot be sued under these circumstances because it has sovereign immunity.

This case was referred to this Court under 28 U.S.C. § 636(b). (Dkt. No. 17.)[1] The Court has deemed both pending motions submitted on papers under Rule 78(b). For the reasons below, the Court respectfully recommends granting the EEOC's motion in its entirety and the Fresenius defendants' motion in part.

## II.   BACKGROUND

This case concerns allegations that Carter was fired from his job because of race and because he complained about a line change. The case began in state court with a complaint that Carter filed on December 17, 2018. (Dkt. No. 1 at 6.) In the complaint, Carter pled that from June 20, 2016 to May 8, 2018, he held the title of Qualified Capper at Fresenius and ran Line 4. On May 9, 2018,

---

[1] This case was originally assigned to District Judge Lawrence J. Vilardo. On January 5, 2020, the case was reassigned to newly appointed District Judge John L. Sinatra, Jr. (Dkt. No. 25.)

defendant Smith reassigned Carter from Line 4 to Line 3. (*Id.* at 7.) Several facts about this line change are missing from the complaint. Carter did not plead why the line change happened, except to note that it happened "arbitrarily"; he also did not plead what he was told about the need for the line change. More importantly, Carter did not plead what the significance of the line change might have been—whether, for example, he retained the same title of Qualified Capper; whether he retained the same salary and benefits; or whether the change from Line 4 to Line 3 would have been considered a material change in employment in some other way. In any event, Carter did plead that he complained to defendant Ashberry in Human Resources about the change and was restored to Line 4 on May 16, 2018.

Carter's employment deteriorated rapidly over the next few days. According to Carter, he worked 12-hour shifts and was entitled to two 50-minute breaks per shift. Sometime between May 16 and May 21, 2018, defendant Smith accused Carter of taking a lunch break that was 10 minutes longer than permitted. (*Id.* at 8.) Carter pled that he had a legitimate reason for this single instance and that other workers took excessive lunch breaks as well. (*Id.*) Carter pled further that normal procedure called for a warning as an initial sanction for an excessive break. (*Id.*) Nonetheless, Carter allegedly was given no warning and no chance to explain himself. Carter was fired on May 21, 2018; from Carter's reference to a "pretextual firing" (*id.* at 7), the Court infers that Carter was told that his excessive lunch break was the sole basis for his termination. Carter believes that he actually was fired because of race, especially considering that other Caucasian employees also took excessive lunch breaks; and because he complained about the line change, which would make the termination retaliatory. Carter concluded the complaint with demands for backpay, compensatory damages, and punitive damages, under several statutes. Carter's assignment of liability extended to the EEOC:

> All defendants named herein are caucasion (sic) /non Blacks who acted in concert to cause and assist in having my employment terminated. This also includes EEOC Representative Ms. Sanchez who made false representations to me that she interviewed an employee witness on my behalf named Robert Burnett despite the fact that he says no such interview occurred. Yet the EEOC has claimed no race discrimination can be found and has dismissed my case.

(*Id.* at 9.)  Before filing suit, Carter filed a complaint with the EEOC on August 22, 2018.  (Dkt. No. 9 at 7.)  Carter claimed only racial discrimination in his EEOC complaint; he did not claim retaliation or any other basis for discriminatory conduct.  (*Id.*)  Additionally, Carter invoked only Title VII in his EEOC complaint; he did not invoke the Equal Pay Act or any other statute within the EEOC's purview.  (*Id.*)  On September 18, 2018, the EEOC issued Carter a "right to sue" letter after finding that it was "unable to conclude that the information obtained establishes violations of the statutes."  (*Id.* at 10.)  The EEOC's notice reminded Carter that any Title VII lawsuit had to be filed within 90 days of receipt of the notice, while any Equal Pay Act lawsuit had to be filed within two years of any alleged underpayment.

The Fresenius defendants removed the case to this District by filing removal papers on September 4, 2019.  (Dkt. No. 1.)  Defendants then filed their respective motions to dismiss on September 11 and 20, 2019.  The Fresenius defendants seek dismissal on multiple grounds.  (Dkt. No. 8.)  Some of the arguments pertain to bad service.  Since Carter chose to commence litigation in state court, N.Y. CPLR 306-b required him to serve the Fresenius defendants within 120 days of the filing of his complaint on December 17, 2018.  Carter instead did not serve the Fresenius defendants until mid-August 2019, about eight months later.  When Carter served Fresenius itself, he did not serve a member, manager, or other person designated to receive process, as would have been required under CPLR 311-a.  On substance, the Fresenius defendants argue that all Title VII claims against individual defendants must be dismissed because Title VII applies only to employers.  The Fresenius defendants argue further that any Title VII claim other than racial discrimination would

4

have to be dismissed for failure to present those claims to the EEOC. Carter's claims under the Equal Pay Act have to be dismissed, according to the Fresenius defendants, because that statute addresses discrimination based on sex and not on any other protected class. Carter's claims under the USERRA would have to fail because he has not alleged discrimination based on military service. Carter's claims under Section 1985 have to be dismissed, according to the Fresenius defendants, because Carter has not pled any information about a conspiracy. Finally, Carter's claims under Section 1981 and the Fourteenth Amendment would have to fail because Carter has not pled any discrimination by state actors. Meanwhile, the EEOC has set forth its own arguments for dismissal (Dkt. No. 16-1); the argument that draws the Court's immediate attention concerns a lack of subject-matter jurisdiction. Specifically, none of the statutes that Carter has invoked waives sovereign immunity to allow suit against a federal agency. At the same time, according to the EEOC, the Federal Tort Claims Act—a statute not invoked by Carter—would waive sovereign immunity only for a tort committed by a federal agency and not for an injury allegedly arising within the scope of the agency's ordinary operations.

Carter opposes defendants' motions in all respects. Carter asserts that he may proceed with a Section 1983 claim of discrimination and retaliation as set forth in *Vega v. Hempstead Union Free School District*, 801 F.3d 72 (2d Cir. 2015). Carter asserts further that all defendants have acknowledged being served and that any defects in service "will be resolved by filing an amended complaint which plaintiff proposes to be filed." (Dkt. No. 19 at 2.) Carter argues that a Human Resources official at Fresenius signed to accept service on behalf of the corporate entity. As for substantive arguments, Carter argues that he has sufficiently pled racial discrimination and retaliation. Carter believes that he can sue the EEOC under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). (*Id.* at 4.) Finally, Carter refutes any arguments about

5

timeliness by starting his 120-day clock on June 25, 2019, the date when the state court granted him *in forma pauperis* ("IFP") status. Carter asserts that he served all defendants within 120 days of receiving IFP status.

### III. DISCUSSION
#### A. Motions to Dismiss Generally
##### i. Standard Under Rule 12(b)(1)

Some of defendants' arguments fall under Rule 12(b)(1). The general standard for dismissal under Rule 12(b)(1) is fairly straightforward. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted). Defendants have two ways, facial and factual, to challenge subject-matter jurisdiction under Rule 12(b)(1):

> The first way is to mount a challenge which accepts the plaintiff's version of jurisdictionally-significant facts as true and addresses their sufficiency, thus requiring the court to assess whether the plaintiff has propounded an adequate basis for subject-matter jurisdiction. In performing this task, the court must credit the plaintiff's well-pleaded factual allegations (usually taken from the complaint, but sometimes augmented by an explanatory affidavit or other repository of uncontested facts), draw all reasonable inferences from them in her favor, and dispose of the challenge accordingly. For ease in classification, we shall call this type of challenge a "sufficiency challenge."
>
> The second way to engage the gears of Rule 12(b)(1) is by controverting the accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the plaintiff and proffering materials of evidentiary quality in support of that position. Unlike, say, a motion for summary judgment under Federal Rule of Civil Procedure 56(c), this type of challenge under Federal Rule of Civil Procedure 12(b)(1)—which we shall call a "factual challenge"—permits (indeed, demands) differential factfinding. Thus, the plaintiff's jurisdictional averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties. In conducting this inquiry, the court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction.
>
> The rationale for this praxis is obvious. A court's authority to hear a particular case is a necessary precondition to the proper performance of the judicial function. Thus, when a factbound jurisdictional question looms, a court must be

> allowed considerable leeway in weighing the proof, drawing reasonable inferences, and satisfying itself that subject-matter jurisdiction has attached.

*Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363–64 (1st Cir. 2001) (citations omitted); *see also, e.g.*, *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016) (summarizing facial challenges, where "the plaintiff has no evidentiary burden," and factual challenges, where "the plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant if the affidavits submitted on a 12(b)(1) motion reveal the existence of factual problems in the assertion of jurisdiction") (internal quotation and editorial marks and citations omitted); *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (summarizing that "[a] facial attack concerns an alleged pleading deficiency whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites") (internal quotation and editorial marks and citations omitted).

    ii.    *Standard Under Rule 12(b)(4) and 12(b)(5)*

Some of defendants' arguments fall under Rules 12(b)(4) and 12(b)(5). "Technically a Rule 12(b)(4) motion is a challenge to the form of the process rather than the manner or method of its service, whereas a Rule 12(b)(5) motion challenges the mode of delivery or the lack of delivery of the summons and complaint." *Coon v. Shea*, No. 2:14-CV-85, 2014 WL 5847720, at *4 (D. Vt. Sept. 5, 2014) (internal quotation marks and citation omitted), *report and recomm'n adopted in relevant part*, No. 2:14-CV-85, 2014 WL 5849053 (D. Vt. Nov. 12, 2014). "When a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010) (internal quotation and editorial marks and citation omitted).

    iii.    *Standard Under Rule 12(b)(6)*

Finally, some of defendants' arguments fall under Rule 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief

that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). Courts assess Rule 12(b)(6) motions "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 61 (2d Cir. 2010) (internal quotation marks and citation omitted). "On a motion to dismiss, the court may consider any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference." *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130 (2d Cir. 2001) (editorial and internal quotation marks and citation omitted). "Simply stated, the question under Rule 12(b)(6) is whether the facts supporting the claims, if established, create legally cognizable theories of recovery." *Cole-Hoover v. Shinseki*, No. 10-CV-669, 2011 WL 1793256, at *3 (W.D.N.Y. May 9, 2011) (internal quotation marks and citation omitted).

       iv.    *Carter's* Pro Se *Status*

While applying the general principles outlined above, the Court will grant plaintiff some procedural leeway to accommodate his *pro se* status. "It is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants. The rationale underlying this rule is that a *pro se* litigant generally lacks both legal training and experience and, accordingly, is likely to forfeit important rights through inadvertence if he is not afforded some degree of protection . . . . The solicitude afforded to *pro se* litigants takes a variety of forms. It most often consists of liberal

construction of pleadings, motion papers, and appellate briefs." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (citations omitted). "At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest; that we should not excuse frivolous or vexatious filings by *pro se* litigants; and that *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law . . . . Under the circumstances, we must all do our best to gauge what is appropriate." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks and citations omitted).

### B. Was Carter's Service on the Fresenius Defendants Proper and Timely?

With the general standards for dismissal established, the Court now will apply those standards to defendants' individual arguments. The first argument to consider is whether Carter was timely in serving the Fresenius defendants and whether he served them properly. The Court will need to look to New York procedural law to address the argument because the potential defect arose before removal and before Rule 81 would have taken effect. *See* Fed. R. Civ. P. 81(c)(3) ("These rules apply to a civil action after it is removed from a state court."). Under state law, Carter had 120 days after commencement of his state suit to serve the Fresenius defendants. CPLR 306-b. Carter commenced his state suit when he filed it on December 17, 2018, *see* CPLR 304(a), meaning that he had to complete service on the Fresenius defendants on or before April 16, 2019. There is no dispute that the Fresenius defendants were served between August 15 and 17, 2019. (Dkt. No. 9 at 3; Dkt. No. 19 at 2.) Carter's only direct response to his untimely service is to start his 120-day clock after he received IFP status in state court. Carter did in fact receive IFP status on June 25, 2019. (Dkt. No. 19 at 16.) The IFP order does not cite a statute but almost certainly would have issued under CPLR 1101. *See* CPLR 1101(a) ("Upon motion of any person, the court in which an

9

action is triable, or to which an appeal has been or will be taken, may grant permission to proceed as a poor person."). CPLR 1101 contains no provision suggesting a tolling of limitations periods, service deadlines, or any other deadline affecting a civil action in the New York State court system. *See Welch v. Hertz Car Rental Agency*, No. 1:18-CV-00717EAW, 2019 WL 1243681, at *4 (W.D.N.Y. Mar. 18, 2019) (citing David D. Siegel and Patrick M. Connors, New York Practice § 191 (6th ed. and Westlaw Supp.)). The application for IFP status thus does not excuse Carter's late service.

Carter runs into the additional problem of how he served Fresenius. Fresenius is a limited liability company. Under CPLR 311-a(a), serving a limited liability company requires serving a member, a manager, or someone formally authorized or designated to receive process. "If service is impracticable under subdivision (a) of this section, it may be made in such manner as the court, upon motion without notice, directs." CPLR 311-a(b). Among the Human Resources official and the individual defendants who were served, no one fits the criteria of CPLR 311-a(a), and Carter did not ask the state court for alternative service under CPLR 311-a(b). Service on the corporate entity thus was defective as well as untimely.

The question now is what to do about the defects in Carter's service on the Fresenius defendants. "It is well known that the dismissal of the action under Fed. R. Civ. P. 12(b)(5) is inappropriate when there is a reasonably conceivable means through which service may be obtained and jurisdiction acquired over the defendant. Furthermore, if the first service is ineffective, and the defects are curable, the Court should treat a motion to dismiss as a motion to quash service of process in the alternative and retain the case pending effective service." *Ramirez De Arellano v. Colloides Naturels Int'l*, 236 F.R.D. 83, 85 (D.P.R. 2006) (internal quotation marks and citations omitted); *see also AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt., L.P.*, 197 F.R.D. 104, 109 (S.D.N.Y. 2000) ("If the statute of limitations has not expired then a discretionary extension of time

to serve would be warranted because no useful purpose would be served by dismissing the complaint. DLJ is already a defendant in the Consolidated Actions pending before this court. Presumably the only result of a dismissal would be that the AIG Plaintiffs would refile their complaint, resulting in a waste of judicial resources.") (citation omitted). Mindful of Carter's *pro se* status, and subject to an assessment below of all of the defendants' substantive arguments, an extension of time for service under Rule 4(m) might be warranted.

### C. Has Carter Stated a Cognizable Claim Against the Fresenius Defendants?

Next, the Court will assess the Fresenius defendants' more substantive attack on Carter's claims under Rule 12(b)(6). Carter could use Title VII against only Fresenius and not against any individual supervisors or employees. *See, e.g., Littlejohn v. City of New York*, 795 F.3d 297, 313 (2d Cir. 2015) ("We first note that Title VII does not create liability in individual supervisors and co-workers who are not the plaintiffs' actual employers.") (internal quotation marks and citation omitted); *Ericson v. City of Meriden*, 113 F. Supp. 2d 276, 284 (D. Conn. 2000) (citation omitted). Any Title VII claim against Fresenius could include retaliation even though Carter included only racial discrimination in his EEOC complaint. Given the narrow and simple timeline of events alleged— Carter complained about a job change and was fired just 12 days later—the alleged racial discrimination and retaliation are intertwined. *See Williams v. New York City Hous. Auth.*, 458 F.3d 67, 71 (2d Cir. 2006). Meanwhile, Carter's claims against Fresenius under other statutes are much too conclusory. Carter has not pled any facts detailing a change of pay that might implicate the Equal Pay Act, and in any event, the Equal Pay Act "prohibits discrimination on the basis of sex only; it does not protect against racial discrimination." *Hardial v. Emblemhealth, Inc.*, No. 14-CV-4968, 2016 WL 3693750, at *8 (E.D.N.Y. July 7, 2016) (citations omitted). Carter's complaint contains no information at all suggesting any events or any sort of discrimination concerning military service, so

11

as to implicate the USERRA. In a similar fashion, Carter has not pled any information about conspiracies needed to sustain a claim under either Section 1985(3). *See, e.g., Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (detailing conspiracy requirements). At most, Carter stated in conclusory fashion that all named defendants "acted in concert" against him, including a representative of the EEOC. (Dkt. No. 1 at 9.) No details are provided, and without some very specific allegation to the contrary, an allegation that the EEOC joined a conspiracy against plaintiff about a line change is implausible.

In contrast, Carter's claim against Fresenius under Section 1981(a) survives, for both racial discrimination and retaliation. "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a). With respect to employment discrimination, Title VII and Section 1981(a) overlap. *See CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 455 (2008); *Ofori-Tenkorang v. Am. Int'l Grp., Inc.*, 460 F.3d 296, 300 (2d Cir. 2006). Here, Carter has alleged that he was fired for reasons—complaining about a line change and taking an extended lunch break—that did not lead to termination of Caucasian coworkers. Carter's complaint contains language that he was deprived "of the full and equal benefit of the law" (Dkt. No. 1 at 9), but the allegation comes almost exclusively within the context of an employment contract, and employment discrimination under Section 1981(a) follows Title VII in that liability occurs against employers and not coworkers or supervisors. *See Williams v. Health Servs., Inc.*, No. 2:14-CV-977-MHT-WC, 2015 WL 8603890, at *3 (M.D. Ala. Nov. 24, 2015), *report and recommendation adopted*, No. 2:14CV977-MHT, 2015 WL 8668224 (M.D. Ala. Dec. 11, 2015); *Jones v. Onondaga Cty.*

12

*Res. Recovery Agency*, 973 F. Supp. 2d 159, 169 (N.D.N.Y. 2013).  More detail would have been helpful, but the detail in the complaint plausibly puts Fresenius on notice of a claim about racial discrimination and retaliation.

In sum, then, Carter pled a cognizable claim against Fresenius for racial discrimination and retaliation under Title VII; and for racial discrimination and retaliation under Section 1981(a).  Accordingly, the Court recommends denying the Fresenius defendants' motion for these claims and granting it in all other respects.  To address the procedural defect described above, the Court further recommends giving Carter 60 days under Rule 4(m) and Rule 15 to file an amended complaint and to serve the Fresenius corporate entity properly under Rule 4(h).

### D.  Can Carter Sue the EEOC?

The Court now turns its attention to the EEOC's motion to dismiss.  The key to resolving the EEOC's motion is understanding why Carter sued it in the first place.  Carter stated in his complaint that "I believe that the dismissal of my complaint was serious error by the EEOC and that there exists sufficient basis in the facts and applicable laws to sustain claims of race discrimination and retaliatory acts of employers and superiors against me for opposing my removal from my long-held line 4 Qualified Capper position to a line 3 position which I successfully complained of."  (Dkt. No. 1 at 7.)  Carter stated toward the end of his complaint that his allegations about a conspiracy against him "include the EEOC Representative Ms. Sanchez who made false representations to me that she interviewed an employee witness on my behalf named Robert Burnett despite the fact that he says no such interview occurred."  (*Id.* at 9.)  Carter has no claim against any employee of the EEOC for individual conduct.  In effect, Carter is suing the EEOC, and any individuals who worked on his case in their official capacities, because he thinks that the agency did not investigate his case thoroughly enough.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit. Sovereign immunity is jurisdictional in nature. Indeed, the terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (internal quotation and editorial marks and citations omitted). The United States government has not waived sovereign immunity to allow claims against the EEOC for actions taken in an official capacity as part of its statutory and regulatory duties. *See Haynes v. Quality Markets*, 307 F. App'x 473, 475 (2d Cir. 2008) (summary order) (noting that "the United States has not waived sovereign immunity for claims against the EEOC, such as plaintiff's, brought pursuant to 42 U.S.C. §§ 1985 and 1986") (citation omitted); *Baba v. Japan Travel Bureau Int'l, Inc.*, 111 F.3d 2, 6 (2d Cir. 1997) ("We therefore hold that Title VII provides no express or implied cause of action against the EEOC for claims that the EEOC failed properly to investigate or process an employment discrimination charge."); *accord McKoy v. Donahue*, No. 11 CIV. 2488 GBH THK, 2012 WL 1416873, at *3 (S.D.N.Y. Apr. 23, 2012). The two principal cases that plaintiff cites in his papers do not change the EEOC's immunity. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), essentially federalized 42 U.S.C. § 1983, which created a private right of action against individuals for actions taken under color of state law. Carter has not alleged that any individual EEOC employees acted on their own and outside of agency duties. *Vega v. Hempstead Union Free School District*, 801 F.3d 72 (2d Cir. 2015), offers a little bit of support for Carter's retaliation claim against Fresenius but otherwise has nothing to do with suing a federal agency in the face of sovereign immunity.

Under the circumstances, the Court's lacks subject-matter jurisdiction to consider any claim that Carter pleaded against the EEOC. Accordingly, the Court recommends granting the EEOC's motion under Rule 12(b)(1) without the need to consider any other arguments or issues.

## IV. CONCLUSION

For all of the foregoing reasons, the Court respectfully recommends granting the EEOC's motion to dismiss (Dkt. No. 16). The Court recommends granting the Fresenius defendants' motion to dismiss (Dkt. No. 7) except to allow the following claims to proceed to discovery: one claim against Fresenius for racial discrimination and retaliation under Title VII; and one claim against Fresenius for racial discrimination and for retaliation under 42 U.S.C. § 1981(a), by way of 42 U.S.C. § 1983. Carter also should be permitted, as he has requested, one amended complaint. Upon adoption of this Report and Recommendation, Carter should be given 60 days to file an amended complaint with the above surviving claims and to serve Fresenius properly under Rule 4(h).

## V. OBJECTIONS

A copy of this Report and Recommendation will be sent to counsel for defendants by electronic filing on the date below. Also on the date below, plaintiff will be mailed a hard copy of this Report and Recommendation along with an informational flyer about the District's Pro Se Assistance Program. "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Any objections must be filed electronically with the Clerk of the Court through the CM/ECF system.

"As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point." *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (citations omitted); *see also Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Where parties receive clear notice of the consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision.") (citation omitted). "We have adopted the rule that failure to object timely to a magistrate

judge's report may operate as a waiver of any further judicial review of the decision, as long as the parties receive clear notice of the consequences of their failure to object. The rule is enforced under our supervisory powers and is a nonjurisdictional waiver provision whose violation we may excuse in the interest of justice." *United States v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 38–39 (2d Cir. 1997) (internal quotation marks and citations omitted).

"Where a party only raises general objections, a district court need only satisfy itself there is no clear error on the face of the record. Indeed, objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke de novo review. Such objections would reduce the magistrate's work to something akin to a meaningless dress rehearsal." *Owusu v. N.Y. State Ins.*, 655 F. Supp. 2d 308, 312–13 (S.D.N.Y. 2009) (internal quotation and editorial marks and citations omitted); *see also Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that of a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round. In addition, it would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and—having received an unfavorable recommendation—shift gears before the district judge.") (citation omitted).

SO ORDERED.

                                                  __/s Hugh B. Scott_____
                                                  Hon. Hugh B. Scott
                                                  United States Magistrate Judge

DATED: May 8, 2020