UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LEE R. CARTER,                                              **REPORT AND**
                                                            **RECOMMENDATION**

                              Plaintiff,

v.                                                          19-CV-01183(JLS)(JJM)

FRESENIUS KABI USA, LLC.,

                              Defendant.
_____

            Plaintiff, Lee R. Carter, a former employee of defendant Fresenius Kabi USA, LLC

("Fresenius Kabi"), commenced this removed action *pro se* in State of New York Supreme Court,

County of Erie, alleging claims of racial discrimination and retaliation in violation of Title VII of

the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and 42 U.S.C.

§1981.  Complaint [1] at 6-9.[1]  Before the court is defendant Fresenius Kabi's motion for summary

judgment pursuant to Fed. R. Civ. P. ("Rule") 56 [55], which has been referred to me by District

Judge John L. Sinatra, Jr. for initial consideration [17, 49].[2]  Having reviewed the parties'

submissions [55-62, 64, 70, 72, 74-75] and heard oral argument on November 19, 2021 [77], I

recommend that the motion be granted.

---

[1]         Bracketed references are to CM/ECF docket entries, and page references are to the CM/ECF
pagination.

[2]         The action was originally referred to Magistrate Judge Hugh B. Scott [17], who addressed
defendants' motion to dismiss the Complaint (May 8, 2020 Report and Recommendation [26], <u>adopted</u>,
August 4, 2020 Decision and Order [32]), which resulted in the filing of the Amended Complaint [34].
Following Judge Scott's passing, the referral order was reassigned to me [49].

**BACKGROUND**

Carter was hired by Fresenius Kabi in June 2016 as a Capping Machine Operator assigned to the third shift at Fresenius Kabi's Grand Island, New York plant.  Fresenius Kabi's Statement of Material Facts [56], ¶5.  He primarily worked on Line 4, but was also trained and worked on Line 3. Id., ¶9. In February 2017, approximately eight months after he commenced his employment, disciplinary issues with Carter arose. First, he received a Written Warning ([58-2] at 6) for inappropriately touching another employee. Fresenius Kabi's Statement of Material Facts [56], ¶10.  In May 2017, Carter received a Verbal Warning ([58-2] at 7-9) and Written Warning (id. at 10-12) as a result of excessive absences and tardiness in violation of Fresenius Kabi's attendance policy.  Fresenius Kabi's Statement of Material Facts [56], ¶12; Verbal Warning [58-2] at 7 ("[s]ince the beginning of the year, you have punched in late 19 times" and); Written Warning [58-2] at 10 ("on May 17, 2017 you did not call or show up for work").  Each warned that a "continuation of this attendance problem will result in additional disciplinary action up to and including termination". [58-2] at 9, 12.  Those warnings were followed with the issuance of a Final Warning/Suspension ([58-2] at 13-15) for reporting to work late on June 30, 2017, and resulted in a one-day unpaid suspension.  Fresenius Kabi's Statement of Material Facts [56], ¶11; Final Warning/Suspension [58-2] at 13-15.[3]

In November 2017, Andrew Smith became Carter's supervisor, and completed Carter's 2017 Annual Review in February 2018 ([58-2] at 18-20), which noted his expectation that Carter's attendance would improve in 2018. Fresenius Kabi's Statement of Material Facts [56], ¶¶14, 15.  However, Carter's attendance continued to be deficient, with him being tardy on seven occasions between March 30 and April 19, 2018. Id., ¶¶16, 17.   In addition, Smith observed that

---

[3]      Each of the Verbal and Written Warnings referenced Fresenius Kabi's attendance policy.  Although that policy is not included in the record, Carter does not dispute its existence or content.

Carter was "taking excessive breaks and meal periods extending beyond the time allotted for such breaks". Smith Affidavit [62], ¶7. At an April 19, 2018 huddle meeting, Smith reminded his team, including Carter, about Fresenius Kabi's attendance policy. Fresenius Kabi's Statement of Material Facts [56], ¶18; April 20, 2018 personnel file memo [62-1].[4] Notwithstanding that reminder, Carter was tardy on five occasions in the weeks that followed. Fresenius Kabi's Statement of Material Facts [56], ¶19.

Consequently, on May 8, 2018, Carter was given a written 60-day Performance Improvement Plan ("PIP") ([58-2] at 21-23) that required him, *inter alia*, to "adhere to the break policy during his shift and show that he can maintain an appropriate break schedule". Fresenius Kabi's Statement of Material Facts [56], ¶21. Carter signed the portion of the PIP, which acknowledged that he had read it and understood that without "immediate improvement . . . further disciplinary action will be taken up to an including termination of employment". [58-2] at 22. However, on May 11, 2018, just three days after the issuance of the PIP, Carter took an excessive meal break. Fresenius Kabi's Statement of Material Facts [56], ¶23. According to Smith, Carter denied that he was away from his work area for more than 45 minutes, prompting a further investigation by Smith. Smith Affidavit [62], ¶12.

On May 15, 2018, while Smith's investigation was pending, Carter informed Teri Ashbery, Fresenius Kabi's Human Resources Supervisor, that he felt that he was being "targeted [by Smith] since being put on a PIP" and pointed to several occurrences, including: 1) his reassignment by Smith from line 4 to line 3 on May 8, 2018; 2) Smith affording him only one break, rather than two, on May 11, 2018; and 3) Smith questioning him on May 14, 2018 about his May 11, 2018 break. Ashbery Affidavit [59], ¶20. Carter did not make any allegation that Smith's

---

[4]    Although Fresenius Kabi alleges that Carter exceeded a 50-minute break, this memo stated that "all employees are entitled to two forty-minute breaks per shift" [62-1].

actions were attributable to his race, and other than this complaint of being "targeted" by Smith, he never made a complaint of unfair treatment during his employment. Id., ¶¶20, 27. When asked at his deposition "Did Mr. Smith ever say anything to you about your race?" or "make any inappropriate comments about your race or anyone's race?" he answered "No". [58-1] at 32.

Carter's concerns were investigated by Ashbery, who prepared a May 17, 2018 memo of her findings. [59-3]. She determined that there was no support for Carter's claim of being the only employee required to switch production lines, learned from Smith that after he mistakenly initially only assigned Carter one break on May 11, 2018, afforded him a second break, and watched a video that confirmed that Carter took an extended break on May 11, 2018. Id.

Ultimately, Smith's review of "swipe times" for the entry and exit doors to the building ([62-2]) and video ([58-2] at 27-28) disproved Carter's claim that his break was less than 50 minutes, and determined that he exceeded his allotted 50-minute break by eight minutes. Fresenius Kabi's Statement of Material Facts [56], ¶25. Consequently, Smith prepared a May 17, 2018 memo to Ashbery of his findings ([59-3]), and recommended that Carter be terminated "[b]ased on his inability to show immediate improvement by violating his [PIP] in addition operating under a final written warning for attendance". Smith Affidavit [62], ¶¶12, 13.

That memo, Ashbery's May 17, 2018 memo, and a copy of Carter's PIP were sent by Ashbery to Peter Martinez, the Senior Manager of Human Resources at the Grand Island plant, who obtained approval from Fresenius Kabi's Corporate Human Resources management for Carter's termination. Ashbery Affidavit [59], ¶22. Carter was informed of his termination on May 21, 2018. Id., ¶23.

Carter no longer disputes that he was away from his work area on May 11, 2018 for more than his allotted break time of 50 minutes. See Carter's deposition transcript [58-1] at 31 ("Q.

- 4 -

So you acknowledge your time away from the line was in excess of 50 minutes, you don't dispute that?  A. No, I don't dispute it. . . . I was six minutes late").  Instead, he argues that he "was using the mens [*sic*] restroom, which was not a break or excessive".  Carter's Statement of Material Facts [75], ¶¶17, 20 ("I had merely used the mens [*sic*] restroom for natural and human reasons not associated with any alleged EXCESSIVE BREAK").  Carter further disputes that he "took multiple breaks of more than one hour".  Id., ¶8.

According to Carter, "there is evidence that numerous other employees of [Fresenius Kabi] often took breaks which were excessive and that [Fresenius Kabi] allowed and condoned such excessive breaks by other employees".  Id., ¶18.  Specifically, he points to Randy Frye, a caucasian co-worker, who was "unfairly allowed to take longer breaks without disciplin[ary] action".  Carter's Statement of Material Facts [75], ¶7; Carter's deposition transcript [58-1] at 36 ("Randy Frye . . . used to take his lunch break, take his sweet old time").  During his deposition, Carter also pointed to a co-worker who "used to leave on his lunch break and go to the casino for two hours", but could not recall this individual's name. [58-1] at 37.  This is disputed by Smith, who states that he did not observe Frye take extended breaks and is unaware of any employee under his supervision that took two-hour breaks. Smith Affidavit [62], ¶¶16-17.  He also denied that Carter or any other employee complained about Frye taking long breaks.  Id., ¶16.

Carter asserts claims of race discrimination and retaliation in violation of Title VII and 42 U.S.C. §1981. Amended Complaint [34].[5]

---

[5]    Although Carter's Amended Complaint [34] names individual defendants, his claims against the individual defendants were previously dismissed, and he was only permitted to assert his Title VII and 42 U.S.C. §1981 claims against Fresenius Kabi. *See* Decision and Order [32] at 4-5.

## DISCUSSION

### A.    Summary Judgment Standard

"Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant.  Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party."  Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

### B.    Deficiencies in Carter's Response to the Motion

There are at least two significant deficiencies in Carter's response to Fresenius Kabi's motion.  First, Carter's Memorandum of Law [72] in opposition to the motion was untimely. The deadline for his response to Fresenius Kabi's motion for summary judgment was originally October 13, 2021.  See September 14, 2021 Text Order [65].  By request dated October 14, 2021 [67], a day after the deadline, Carter stated that while he was able to prepare his Statement of Material Facts [75] and Affidavit [74], which he attached, he required an extension until October 20, 2021 to file his Memorandum of Law.  I granted that request and extended his deadline to file any responding papers to October 20, 2021.  See October 18, 2021 Text Order [69].[6] Notwithstanding that extension, Carter's Memorandum of Law [72], though dated October 20,

---

[6]    While Carter's Statement of Material Facts [75] and Affidavit [74] were initially not timely filed, they became timely by the extension I granted for his response.

2021, was not postmarked until October 26, 2021 and not received by the Clerk's Office until October 28, 2021 - eight days after the deadline.  *See* McIntosh v. Antonino, 71 F.3d 29, 36 (1st Cir. 1995) ("[w]hen papers are mailed to the clerk's office, filing is complete only upon the clerk's receipt of them"); Rule 5(d)(2)(A).  This unexcused failure to comply with the deadline which Carter himself had requested was prejudicial to Fresenius Kabi, which filed its reply in further support of its motion for summary judgment on its deadline of October 27, 2021 [70], a day *before* Carter's Memorandum of Law [72] was filed and presumably received by Fresenius Kabi.[7]

Next, Carter's Statement of Material Facts [75] does not comply with the requirements L.R. Civ. P. ("Local Rule") 56(a)(2), which cautions that "[e]ach numbered paragraph in the moving party's statement of material facts may be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement".  *See also* Rule 56(e).   Nor does it comply with Rule 56(c)(1), which "requires a party opposing summary judgment to cite to specific material in the record establishing the existence of a material issue of fact to avoid summary judgment on a claim".  Ayers v. Esgrow, 2020 WL 3924493, *5 (W.D.N.Y.), adopted, 2020 WL 3893799 (W.D.N.Y. 2020).

Carter knew (or should have known) of these requirements, since the "Important Notice to *Pro Se* Litigants" [64] that accompanied Fresenius Kabi's motion for summary judgment motion specifically notified him of what was required.  *See also* Local Rule 5.2(i) ("[a]ll *pro se* litigants shall become familiar with, follow, and comply with the Federal Rules of Civil Procedure and the Local Rules of Civil Procedure").  Nevertheless, as Fresenius Kabi notes, Carter's Statement of Material Facts [75] fails to comply with the requirements of Local Rule 56(a)(2) and

---

[7]     Carter's Memorandum of Law [72] was not accompanied by an affidavit of service or other indication that it was mailed to Fresenius Kabi.  Therefore, I assume that Fresenius Kabi received it electronically when it was docketed on CM/ECF.

Rule 56(c)(1) in several respects.  Most notably, it does not cite to record evidence or identify what specific facts are contested or admitted by Carter.

These deficiencies justify my disreging Carter's Memorandum of Law deeming Fresenius Kabi's Statement of Material Facts [56] to be undisputed.  *See* Fresenius Kabi's Reply Memorandum of Law [70] at 4-5 (citing cases). However, even if I were to consider Carter's belated submissions,[8] my recommendation would be the same.

## C.    Discrimination Claims

"Title VII prohibits an employer from engaging in intentional employment discrimination - known as 'disparate treatment' - on the basis of race or national origin." Mimosa Pham v. Department of Children & Families, 2014 WL 3420470, *2 (D. Conn. 2014). *See* 42 U.S.C.A. § 2000e-2(a)(1). "Disparate treatment on the basis of race is also a violation of § 1981." Gachette v. Metro North High Bridge, 2013 WL 144947, *5 (S.D.N.Y. 2013) (citing 42 U.S.C. §§1981(a)-(b)).  "[D]irect, smoking gun, evidence of discrimination is clearly not required for a plaintiff to prevail." Babcock v. CAE-Link Corp., 878 F. Supp. 377, 384 n. 8 (N.D.N.Y. 1995). Victims of discrimination may instead rely on circumstantial evidence. *See* id.

Such claims "brought under Title VII [and] Section 1981 . . .  are analyzed pursuant to the burden-shifting framework established by the Supreme Court in McDonnell Douglas v. Green, 411 U.S. 792 (1973)." Quintero v. Angels of the World, Inc., 2021 WL 4464123, *5 (E.D.N.Y.), adopted, 2021 WL 4463488 (E.D.N.Y. 2021).  To make a *prima facie* showing of disparate treatment, a plaintiff must "show (1) that [ ]he is a member of a protected class; (2) that [

---

[8]    Although the allegations contained in Carter's Statement of Material Facts [75] are not sworn to before a notary public or attested to under penalty of perjury as permitted by 28 U.S.C. §1746, I have gone so far as to treat the Statement of Materials Facts as an affidavit or declaration.

]he was qualified for employment in the position; (3) that [ ]he suffered an adverse employment action; and, in addition, has (4) some minimal evidence suggesting an inference that the employer acted with discriminatory motivation". <u>Littlejohn v. City of New York</u>, 795 F.3d 297, 307 (2d Cir. 2015).  "The burden then shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for the disparate treatment." <u>Vega v. Hempstead Union Free School District</u>, 801 F.3d 72, 83 (2d Cir. 2015).  "If the employer articulates such a reason for its actions, the burden shifts back to the plaintiff to prove that the employer's reason was in fact pretext for discrimination." <u>Id</u>.

Fresenius Kabi challenges Carter's ability to meet his burden of establishing a *prima facie* case of race discrimination due to the absence of any evidence establishing that his termination took place under circumstances giving rise to an inference of race discrimination.  Fresenius Kabi's Memorandum of Law [75] at 13-16.  However, even assuming that Carter could meet his *prima facie* burden, which Fresenius Kabi itself acknowledges requires a *de minimis* showing (<u>id</u>. at 12), I agree with Fresenius Kabi's alternative argument, namely that it terminated Carter for a legitimate, nondiscriminatory reason (taking a longer than allotted break after being issued the PIP just three days earlier cautioning him against that very same conduct), and Carter has failed to demonstrate that this reason was merely a pretext for discrimination.  <u>Id</u>. at 16.

"[F]ailures in basic job requirements" such as "poor punctuality and attendance" constitute valid, legitimate, non-discriminatory reasons for adverse employment action." <u>Jordan v. United Health Group</u>, 2018 WL 11202698, *4 (W.D.N.Y.), <u>adopted</u>, 2018 WL 11202700 (W.D.N.Y. 2018), <u>aff'd</u>, 783 F. App'x 31 (2d Cir. 2019) (Summary Order).  Standing alone, the eight additional minutes Carter took beyond his allotted 50 minute break on May 11, 2018 may seem *de minimis*. However, when viewed against the backdrop of his well-documented history of time and attendance issues and the fact that it followed closely on the heels of him receiving the PIP

which cautioned him that he needed to "adhere to the break policy . . . and maintain an appropriate break schedule" or face "further disciplinary action . . . up to and including termination of employment", his failure to adhere to that policy gave Fresenius Kabi legitimate and nondiscriminatory reason to terminate his employment. [58-2] at 21-22. *See* Bong Chul Kim v. Bogopa Services Corp., 2017 WL 3242253, *5 (E.D.N.Y. 2017) ("Kim received warnings for attendance, tardiness, and conduct violations. While on a 'last chance warning,' Defendant submits that Plaintiff arrived at work late and left early on October 8, 2014 without permission, and was therefore terminated. With that, Defendant has presented a legitimate, non-discriminatory justification for the adverse action").

        Carter's arguments to the contrary are not persuasive. First, at oral argument he pointed to a bathroom stop following his break as the reason why he was away from his work area on May 11, 2018 for more than his allotted 50-minute break.[9]  He argues that "use of the mens [*sic*] restroom cannot be deemed an 'EXCESSIVE BREAK'".  Carter's Memorandum of Law [72] at 2. However, he points to no Fresenius Kabi policy or other evidence that this was a permissible basis to extend his time away from his work area beyond 50 minutes.

        Next, Carter argues that Fresenius Kabi fails "to show that there had been any prior incidents involving alleged EXCESSIVE BREAKS".  Carter's Statement of Facts [75], ¶13.  That argument ignores Smith's Affidavit [62], which states that following Carter's year-end review, he observed Carter taking "excessive breaks and meal periods beyond the time allotted for such

---

[9]     For the first time at oral argument, Carter alleged that he suffered from colitis for which he had been excused from work, at some point, pursuant to the Family and Medical Leave Act ("FMLA").  "But this Court need not consider arguments that are raised for the first time at oral argument." Willford v. United Airlines, Inc., 2021 WL 4066502, *7 n. 5 (S.D.N.Y. 2021). *See also* Flores v. Stanford, 2021 WL 4441614, *7 (S.D.N.Y. 2021) ("[d]istrict courts generally reject arguments raised for the first time at oral argument, out of both fairness and a concern for efficiency").  In any event, even if I considered that allegation, Carter did not attribute his May 11, 2018 trip to the bathroom to his colitis or his termination to his use of FMLA leave.

breaks". Id., ¶7. In any event, even if Carter had not previously exceeded his breaks, it is undisputed that he had a history of time and attendance issues, and the PIP, which he acknowledged reading, specifically required him to "maintain an appropriate break schedule" ([58-2] at 21-22), a condition that he violated and was warned could lead to his termination.

Carter further alleges, without support, that Fresenius Kabi has "manipulated and falsified documents in their efforts to fabricate a defense". Carter's Statement of Facts [75], ¶9. However, "courts have routinely held, a plaintiff may not survive summary judgment through a conclusory assertion that relevant records were forged or falsified". Falls v. (Police Officer) Detective Michael Pitt, 2021 WL 1164185, *41 (S.D.N.Y. 2021) (citing cases).

Finally, Carter argues that Fresenius Kabi should not be permitted to rely on the PIP because it "conspicuously failed to raise any claims regarding [the] alleged PIP" before Magistrate Judge Scott. Carter's Statement of Material Facts [75], ¶15. That argument lacks merit. The issue before Magistrate Judge Scott in adjudicating defendants' dismissal motion was solely the sufficiently of the Complaint and whether it plausibly alleged claims for relief. Fresenius Kabi was not required to raise defenses that relied on the PIP or other materials outside of the Complaint. See United States v. $1,073,200.00 in U.S. Currency, 2007 WL 1017317, *2 (N.D.N.Y. 2007) ("[i]t is well settled that the Court may not look to evidence outside the pleadings in deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim").

To rebut the legitimate, non-discriminatory reason offered by Fresenius Kabi for his termination, Carter "must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action". Weinstock v. Columbia University, 224 F.3d 33, 42 (2d Cir. 2000). "A showing that similarly

- 11 -

situated employees belonging to a different racial group received more favorable treatment can also serve as evidence that the employer's proffered legitimate, non-discriminatory reason for the adverse job action was a pretext for racial discrimination." Graham v. Long Island Rail Road, 230 F.3d 34, 43 (2d Cir. 2000). Here, Carter contends that "caucasian employees such as [Frye] and others [were] unfairly allowed to take longer breaks without disciplin[ary] action". Carter's Statement of Material Facts [75], ¶7.

"While similarly situated employees who receive different treatment can be evidence of discrimination, the employees must be similarly situated in *all material* aspects. To satisfy the 'all material respects' requirement, a plaintiff must show that similarly situated employees engaged in comparable conduct, meaning there is a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, such that the conduct for which the employer imposed discipline was of comparable seriousness to the conduct of the similarly situated but undisciplined employees." Jordan v. United Health Group Inc., 783 F. App'x 31, 33 (2d Cir. 2019) (Summary Order) (emphasis added).

Carter offers no evidence demonstrating that Frye or the other unidentified Caucasian co-worker were materially similar to him, but were treated more favorably. He provides no evidence of their specific job titles, their break and work schedules, their violation of Fresenius Kabi's time and attendance policy, or their disciplinary history. *See* Jordan, 783 Fed. App'x at 33-34 (finding that the plaintiff failed to identify co-workers similarly situated, but treated differently, where she "did not offer any evidence showing that her co-workers' absences and late arrivals were 'unplanned,' *i.e.*, unapproved, and therefore subject to discipline. Further, the purported comparators were not similar in all material respects; one employee was on a flexible schedule due to a medical condition, another held a position different from Jordan, and two others did not have a

number of absences and late arrivals comparable to Jordan's"); Russell v. Aid to Developmentally

Disabled, Inc., 753 F. App'x 9, 14 (2d Cir. 2018) (Summary Order) ("Russell pointed to no

evidence that the enforcement of the attendance policy was a pretext for gender discrimination.

Russell's comparator evidence fails to establish pretext because there is insufficient evidence that

her male comparators were similarly situated to her").

   In fact, when asked at his deposition about what evidence he had "of people coming

in to work late", Carter responded "I don't have any evidence.  I mean, Fresenius Kabi has the

evidence".  Carter's deposition transcript [58-1] at 16; Carter's Statement of Material Facts [75],

¶22 ("[d]efendants should also be required to provide video tape evidence of daily activities of the

numerous other employees of Fresenius Kabi . . . who took breaks . . . which will disclose the

pervasiveness of numerous employees taking EXCESSIVE BREAKS WITHOUT ANY ACTION

BEING TAKEN SUCH AS TERMINATION OF EMPLOYMENT"). Carter's "*pro se* status does

not excuse him from taking necessary discovery in a timely manner and responding to summary

judgment with admissible evidence". Tramble v. Columbia University, 1999 WL 61826, *13

(S.D.N.Y. 1999).

   Carter offers no supporting evidence supporting his assertion that his termination

was motivated by race. Although he complained before his termination that Smith had "targeted"

him, he never alleged that Smith's conduct was race-based.  In any event, Carter does not dispute

the existence of the PIP, its content, or the fact that three days after its issuance he was away from

his work area for more than his allotted 50 minutes.  It was these facts that prompted his termination

- a decision ultimately made by individuals other than Smith.

   The relevant issue here is not whether Fresenius Kabi's decision to terminate Carter

was correct, but rather "whether it was discriminatory".  Robinson v. Zurich North America

- 13 -

Insurance Co., 892 F. Supp. 2d 409, 430 (E.D.N.Y. 2012). Yet, Carter has done no more than to question the correctness of Fresenius Kabi's decision to terminate him, which falls well short of demonstrating that the reasons given by Fresenius Kabi for his termination were pretextual. *See* Rightnour v. Tiffany & Co., 354 F. Supp. 3d 511, 525 (S.D.N.Y. 2019) (it "is well settled that the mere fact that an employee disagrees with an employer's evaluation of that employee's misconduct . . . or even has evidence that the decision was objectively incorrect, does not necessarily demonstrate, by itself, that the employer's reasons are pretextual").

**D.     Retaliation Claims**

"Retaliation claims under Title VII and § 1981 are both analyzed pursuant to Title VII principles and the McDonnell Douglas burden-shifting evidentiary framework." Littlejohn, 795 F.3d at 315. To establish a *prima facie* case, a plaintiff must show that "(1) he was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and the adverse action". Rivera v. Rochester Genesee Regional Transportation Authority, 743 F.3d 11, 24 (2d Cir. 2012). If the employer rebuts the plaintiff's *prima facie* showing with "a legitimate, non-retaliatory reason for the adverse employment action" . . . . 'the presumption of retaliation dissipates,' . . . and the plaintiff must prove 'that the desire to retaliate was the but-for cause of the challenged employment action.'" Ya-Chen Chen v. City University of New York, 805 F.3d 59, 70 (2d Cir. 2015) "Unlike Title VII discrimination claims, to which a 'motivating-factor standard' of causation applies, retaliation claims require proof that retaliation was the 'but-for' cause of the adverse action." Philpott v. State University of New York, 805 F. App'x 32, 34 (2d Cir. 2020) (Summary Order).

Fresenius Kabi argues that Carter fails to establish a *prima facie* case of retaliation, since he did not "engage[ ] in any protected activity". Fresenius Kabi's Memorandum of Law [57] at 21. I agree. "To constitute 'protected activity,' a plaintiff's complaint must include sufficiently specific terms so that the employer is put on notice that the plaintiff believes he or she is being discriminated against on the basis of race or any other characteristic protected by Title VII." Morales v. Bottling Group, LLC, 374 F. Supp.3d 257, 274 (W.D.N.Y. 2019), aff'd, 814 F. App'x 630 (2d Cir. 2020), cert. denied, 141 S. Ct. 2535 (2021). There being no evidence in the record that Carter connected race to his complaints of being "targeted" by Smith, I conclude that no protected activity occurred. Even if Carter had believed at that time that race was the motivation for Smith's conduct, "[t]he onus is on the speaker to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally". Morales, 374 F. Supp.3d at 274.

In any event, even if Carter did engage in a protected activity, for the reasons discussed above, he fails to provide evidence that discrimination played any part in Fresenius Kabi's decision to terminate him, much less that it was the but-for cause. Therefore, I recommend that his retaliation claim likewise be dismissed.

## CONCLUSION

For these reasons, I recommend that the Fresenius Kabi's motion for summary judgment [55] be granted. Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the clerk of this court by January 31, 2022. Any requests for extension of this deadline must be made to Judge Sinatra. A party who "fails to object

timely . . . waives any right to further judicial review of [this] decision". <u>Wesolek v. Canadair Ltd.</u>, 838 F. 2d 55, 58 (2d Cir. 1988); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985). Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

   The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: January 12, 2022

         /s/Jeremiah J. McCarthy
         JEREMIAH J. MCCARTHY
         United States Magistrate Judge